ROLAND J. TARNOWSKI v. F. JAMES RESOP.[1]

February 8, 1952.

No. 35,669.

[1]Reported in 51 N. W. (2d) 801.

*Christensen & Johnson, Richard Converse,* and *Bauers & Carlson,* for appellant.

*Cronin, Mitchell & Spooner,* for respondent.

KNUTSON, JUSTICE.

Plaintiff desired to make a business investment. He engaged defendant as his agent to investigate and negotiate for the purchase of a route of coin-operated music machines. On June 2, 1947, relying upon the advice of defendant and the investigation he had made, plaintiff purchased such a business from Phillip Loechler and Lyle Mayer of Rochester, Minnesota, who will be referred to hereinafter as the sellers. The business was located at La Crosse, Wisconsin, and throughout the surrounding territory. Plaintiff alleges that defendant represented to him that he had made a thorough investigation of the route; that it had 75 locations in operation; that one or more machines were at each location; that the equipment at each location was not more than six months old; and that the gross income from all locations amounted to more than $3,000 per month.

As a matter of fact, defendant had made only a superficial investigation and had investigated only five of the locations. Other than that, he had adopted false representations of the sellers as to the other locations and had passed them on to plaintiff as his own. Plaintiff was to pay $30,620 for the business. He paid $11,000 down. About six weeks after the purchase, plaintiff discovered that the representations made to him by defendant were false, in that there were not more than 47 locations; that at some of the locations there were no machines and at others there were machines more than six months old, some of them being seven years old; and that the gross income was far less than $3,000 per month. Upon discovering the falsity of defendant's representations and those of the sellers, plaintiff rescinded the sale. He offered to return what he had received, and he demanded the return of his money. The sellers refused to comply, and he brought suit against them in the district court of Olmsted county. The action was tried, resulting in a verdict of $10,000 for plaintiff. Thereafter, the sellers paid plaintiff $9,500, after which the action was dismissed with prejudice pursuant to a stipulation of the parties.

In this action, brought in Hennepin county, plaintiff alleges that defendant, while acting as agent for him, collected a secret commission from the sellers for consummating the sale, which plaintiff seeks to recover under his first cause of action. In his second cause of action, he seeks to recover damages for (1) losses suffered in operating the route prior to rescission; (2) loss of time devoted to operation; (3) expenses in connection with rescission of the sale and his investigation in connection therewith; (4) nontaxable expenses in connection with prosecution of the suit against the sellers; and (5) attorneys' fees in connection with the suit. The case was tried to a jury, and plaintiff recovered a verdict of $5,200. This appeal is from the judgment entered pursuant thereto.

Defendant contends that after recovery of a verdict by plaintiff in his action for rescission against the sellers he cannot maintain this action against defendant. Principally, defendant argues that recovery in the action against the sellers is a bar to this action for

36

the following reasons: (1) That plaintiff has elected one of alternative remedies and cannot thereafter pursue another; (2) that successful pursuit of one remedy constitutes a bar to another remedy for the same wrong, even though the outcome of the first action did not make plaintiff whole in point of actual loss; (3) that the satisfied verdict in the rescission case is a bar; and (4) that defendant and the sellers were joint tortfeasors, and the discharge of one discharged them all.

■ With respect to plaintiff's first cause of action, the principle that all profits made by an agent in the course of an agency belong to the principal, whether they are the fruits of performance or the violation of an agent's duty, is firmly established and universally recognized. Smitz v. Leopold, 51 Minn. 455, 53 N. W. 719; Crump v. Ingersoll, 44 Minn. 84, 46 N. W. 141; Kingsley v. Wheeler, 95 Minn. 360, 104 N. W. 543; Goodhue Farmers' Warehouse Co. v. Davis, 81 Minn. 210, 83 N. W. 531; Snell v. Goodlander, 90 Minn. 533, 97 N. W. 421; City of Minneapolis v. Canterbury, 122 Minn. 301, 142 N. W. 812, 48 L.R.A.(N.S.) 842; Doyen v. Bauer, 211 Minn. 140, 300 N. W. 451; Magee v. Odden, 220 Minn. 498, 20 N. W. (2d) 87.

It matters not that the principal has suffered no damage or even that the transaction has been profitable to him. Raymond Farmers Elev. Co. v. American Surety Co. 207 Minn. 117, 290 N. W. 231, 126 A. L. R. 1351.

The rule and the basis therefor are well stated in Lum v. McEwen, 56 Minn. 278, 282, 57 N. W. 662, where, speaking through Mr. Justice Mitchell, we said:

"Actual injury is not the principle the law proceeds on, in holding such transactions void. Fidelity in the agent is what is aimed at, and, as a means of securing it, the law will not permit him to place himself in a position in which he may be tempted by his own private interests to disregard those of his principal. * * * It is not material that no actual injury to the company [principal] resulted, or that the policy recommended may have been for its best interest.

Courts will not inquire into these matters. It is enough to know that the agent in fact placed himself in such relations that he might be tempted by his own interests to disregard those of his principal.

"The transaction was nothing more or less than the acceptance by the agent of a bribe to perform his duties in the manner desired by the person who gave the bribe. Such a contract is void.

"This doctrine rests on such plain principles of law, as well as common business honesty, that the citation of authorities is unnecessary."

The right to recover profits made by the agent in the course of the agency is not affected by the fact that the principal, upon discovering a fraud, has rescinded the contract and recovered that with which he parted. Restatement, Agency, § 407(2). *Comment e on Subsection* (2) reads:

"If an agent has violated a duty of loyalty to the principal so that the principal is entitled to profits which the agent has thereby made, the fact that the principal has brought an action against a third person and has been made whole by such action does not prevent the principal from recovering from the agent the profits which the agent has made. Thus, if the other contracting party has given a bribe to the agent to make a contract with him on behalf of the principal, the principal can rescind the transaction, recovering from the other party anything received by him, or he can maintain an action for damages against him; in either event the principal may recover from the agent the amount of the bribe."

It follows that, insofar as the secret commission of $2,000 received by the agent is concerned, plaintiff had an absolute right thereto, irrespective of any recovery resulting from the action against the sellers for rescission.

▪ Plaintiff's second cause of action is brought to recover damages for (1) losses suffered in the operation of the business prior to rescission; (2) loss of time devoted to operation; (3) expenses in connection with rescission of the sale and investigation therewith; (4) nontaxable expenses in connection with the prosecution of the

suit against the sellers; and (5) attorneys' fees in connection with the suit.

The case comes to us on a bill of exceptions. No part of the testimony of the witnesses is included, so we must assume that the evidence establishes the items of damage claimed by plaintiff. Our inquiry is limited to a consideration of the question whether a principal may recover of an agent who has breached his trust the items of damage mentioned after a successful prosecution of an action for rescission against the third parties with whom the agent dealt for his principal.

The general rule is stated in Restatement, Agency, § 407(1), as follows:

"If an agent has received a benefit as a result of violating his duty of loyalty, the principal is entitled to recover from him what he has so received, its value, or its proceeds, and also the amount of damage thereby caused, except that if the violation consists of the wrongful disposal of the principal's property, the principal cannot recover its value and also what the agent received in exchange therefor."

In *Comment a on Subsection* (1) we find the following:

"* * * In either event, whether or not the principal elects to get back the thing improperly dealt with or to recover from the agent its value or the amount of benefit which the agent has improperly received, he is, in addition, entitled to be indemnified by the agent for any loss which has been caused to his interests by the improper transaction. Thus, if the purchasing agent for a restaurant purchases with the principal's money defective food, receiving a bonus therefor, and the use of the food in the restaurant damages the business, the principal can recover from the agent the amount of money improperly expended by him, the bonus which the agent received, and the amount which will compensate for the injury to the business."

The general rule with respect to damages for a tortious act is that—

"The wrong-doer is answerable for all the injurious consequences of his tortious act which, according to the usual course of events and general experience, were likely to ensue and which, therefore, when the act was committed, he may reasonably be supposed to have foreseen and anticipated." 1 Sutherland, Damages (4 ed.) § 45, quoted with approval in Sargent v. Mason, 101 Minn. 319, 323, 112 N. W. 255, 257.

The general rule is given in Restatement, Torts, § 910, as follows:

"A person injured by the tort of another is entitled to recover damages from him for all harm, past, present and prospective, legally caused by the tort."

Bergquist v. Kreidler, 158 Minn. 127, 196 N. W. 964, involved an action to recover attorneys' fees expended by plaintiffs in an action seeking to enforce and protect their right to the possession of real estate. Defendant, acting as the owner's agent, had falsely represented to plaintiffs that they could have possession on August 1, 1920. It developed after plaintiffs had purchased the premises that a tenant had a lease running to August 1, 1922, on a rental much lower than the actual value of the premises. Defendant (the agent) conceded that plaintiffs were entitled to recover the loss in rent, but contended that attorneys' fees and disbursements expended by plaintiffs in testing the validity of the tenant's lease were not recoverable. In affirming plaintiffs' right to recover we said (158 Minn. 132, 196 N. W. 966):

"* * * the litigation in which plaintiffs became involved was the direct, legitimate and a to-be-expected result of appellant's misrepresentation. The loss sustained by plaintiffs in conducting that litigation 'is plainly traceable' to appellant's wrong and he should make compensation accordingly."

So far as the right to recover attorneys' fees is concerned, the same may be said in this case. Plaintiff sought to return what had been received and demanded a return of his down payment. The sellers refused. He thereupon sued to accomplish this purpose,

as he had a right to do, and was successful. His attorneys' fees and expenses of suit were directly traceable to the harm caused by defendant's wrongful act. As such, they are recoverable.

The Bergquist case is distinguished in the later case of Stickney v. Goward, 161 Minn. 457, 201 N. W. 630, 39 A. L. R. 1216, where we held that attorneys' fees might not be recovered in a separate suit against the same parties that were involved in a prior suit. That situation does not prevail here. In this case, defendant was not a party to the suit against the sellers. As in the Bergquist case, the attorneys' fees and expenses of litigation against the sellers became necessary because of defendant's tortious conduct. The general rule applicable here is stated in 15 Am. Jur., Damages, § 144, as follows:

"It is generally held that where the wrongful act of the defendant has involved the plaintiff in litigation with others or placed him in such relation with others as makes it necessary to incur expense to protect his interest, such costs and expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act and may be recovered as damages."

The same is true of the other elements of damage involved. See, generally, 15 Am. Jur., Damages, § 138.

■ Defendant contends that plaintiff had an election of remedies and, having elected to proceed against the sellers to recover what he had paid, is now barred from proceeding against defendant. It is true that upon discovery of the fraud plaintiff had an election of remedies against the sellers. It is not true, however, that, having elected to sue for recovery of that with which he had parted, he is barred from proceeding against his agent to recover damages for his tortious conduct. While some of the allegations in plaintiff's complaint against the sellers are similar to or identical with those in his complaint in this case, insofar as the fraud is concerned, the right of recovery here against the agent goes much further than the action against the sellers. Many of the elements

of damage against the agent are not available to plaintiff against the sellers. For instance, he has no right to recover attorneys' fees and expenses of the litigation against the sellers. He has that right against the agent. Plaintiff may recover profits made by the agent, irrespective of his recovery against the sellers. Losses directly flowing from the agent's tortious conduct are not recoverable against the sellers in an action for rescission, but they may be recovered against the agent, whose breach of faith has caused such losses.

■ Nor is the settlement and dismissal of the action against the sellers a bar to an action against the agent, for the same reasons as stated above. The sellers and agent are not joint tortfeasors in the sense that their wrongful conduct necessarily grows out of the same wrong. Their individual torts may have been based on the same fraud, but their liabilities to plaintiff do not have the same limitations. In simple terms, the causes of action are not the same.

Defendant relies principally upon Martin v. Setter, 184 Minn. 457, 239 N. W. 219, 80 A. L. R. 471. In that case, plaintiffs and defendant contracted to exchange land. One Rieger acted as agent for defendant in the transaction. In a suit to recover for a default, defendant interposed a counterclaim for damages alleged to have resulted from fraudulent representations as to the value of the land which defendant received in the trade. It developed that defendant had instituted an action against his agent, Rieger, to recover damages for the identical misrepresentations plaintiffs were charged with, and that defendant had made a settlement with Rieger and had dismissed his action against Rieger with prejudice. We held that Rieger and plaintiffs were joint tortfeasors; that the action asserted against Rieger and the one against plaintiffs were one and the same; consequently, that a release of Rieger released plaintiffs.

The case is readily distinguishable from the instant case. The Martin case was not one for rescission. There, defendant's counterclaim sought to recover his damages, he retaining what he had

received. He had previously settled an action brought against his agent to recover the same damages. In the case now before us, the two actions, though based on the same fraud, are not the same, as we have pointed out above. The Martin case is not authority for the proposition for which defendant now contends. Settlement of the action for rescission against the sellers is not a bar to an action against the agent to recover those elements of damages not involved in the action for rescission brought against the sellers.

Affirmed.

