Susan **GILCHRIST,** Respondent
(C8–84–2152),

**and**

Patricia **Klein,** individually and on behalf of all those similarly situated, Respondent (CX–85–1935), Petitioner-Appellant (C1–85–1936),

**v.**

Norman **PERL,** individually and De-Parcq, Anderson, Perl, Hunegs & Rudquist, P.A., Petitioners-Appellants (C8–84–2152 & CX–85–1935), Respondents (C1–85–1936).

Nos. C8–84–2152, CX–85–1935
and C1–85–1936.

Supreme Court of Minnesota.

May 16, 1986.

Rehearing Denied June 23, 1986.

Charles E. Spevacek, Minneapolis, for Norman Perl.

Robert A. Judd, Minneapolis, for Susan Gilchrist.

Marshall H. Tanick, Opperman & Paquin, Minneapolis, for Patricia Klein.

SIMONETT, Justice.

In these two cases consolidated on appeal, an attorney breached a fiduciary duty to his clients in negotiating their similar personal injury claims. The breach constituted constructive rather than actual fraud and the clients sustained no loss. The issues presented are: whether the attorney should forfeit his fees in their entirety to the clients and such damages be trebled; whether a class action by the clients is appropriate; and whether the plaintiff class can also recover its attorney fees from defendants.

The defendants in both cases are attorney Norman Perl and his firm, DeParcq, Anderson, Perl, Hunegs & Rudquist, P.A. In the first case, the plaintiff is Susan Gilchrist bringing her own action. The second case is a class action brought by plaintiff Patricia Klein for herself and all others similarly situated. All plaintiffs were clients of Perl, who negotiated settlements of their "Dalkon Shield" claims against A.H. Robbins Co. and its insurer, Aetna Casualty & Surety Company. Plaintiffs seek as damages those portions of their settlements (generally one-third) that Perl received as his fees.

In the Gilchrist action, the trial court denied plaintiff's motion for partial summary judgment, ruling there was a fact issue whether less than the entire amount of Perl's fee should be forfeited. In the Klein action, the trial court granted summary judgment for 128 class members for the full amount of fees paid Perl, totaling with prejudgment interest $705,290.33, plus an award of interim attorney fees and costs to class counsel of $126,215.51.[1] The trial court refused class counsel's request to increase the lodestar amount of attorney fees by a multiple of 1.75 and further denied a motion to treble the damages. The court of appeals granted discretionary review in the Gilchrist case and both defendants and successful plaintiffs in the Klein class action appealed. The court of appeals, 363 N.W.2d 904, requested accelerated review of both cases by this court.

### I.

We first consider whether an attorney's breach of a fiduciary duty to a client must always as a matter of law result in a total fee forfeiture, or if in some instances the amount of the forfeiture may be scaled to the degree of misconduct. We conclude in some instances the forfeiture may, if the trier of fact so finds, be less than total.

#### Review of prior cases

A review of our case law on fee forfeitures, leading up to and including our two recent decisions also involving attorney Perl's handling of similar Dalkon Shield claims, illustrates our long-settled rule that an attorney guilty of actual fraud forfeits his entire fee. As first stated in *Davis v. Swedish-American National Bank*, 78 Minn. 408, 418, 81 N.W. 210, 212–13 (1899):

> [F]or the rule is that, if an attorney is *guilty of actual fraud or bad faith* towards his client in the matter of his employment, he is *not entitled to any pay* for his services. The basis of this rule is good morals and a sound public policy, and it should be enforced in all cases where the fraud of the attorney is established by clear and satisfactory proof. The trial court having found that the attorneys of the assignee were *guilty*

---

1. Certification of the class action was granted after Gilchrist commenced her suit and apparently she is not a member of the class, although this is not clear. In the Klein action, the trial court adjudicated the claims of 141 class members on motions for summary judgment. Judgments in favor of plaintiffs were awarded on 128 claims and in favor of defendant Perl on 13 claims. The motions of five other plaintiffs for summary judgment were denied.

*of actual fraud and bad faith* in the matter of their employment, it follows that they are not entitled to any compensation for their services * * *. [Emphasis added.]

*See also Faber v. Enkema*, 180 Minn. 493, 231 N.W. 410 (1930) (attorney who is "unfaithful to his client and guilty of fraud" forfeits right to compensation); *Blackey v. Alexander*, 156 Minn. 478, 482, 195 N.W. 455, 456 (1923) (attorney confessedly guilty of intentional fraud "forfeited *all* his compensation").

In *In re Estate of Lee*, 214 Minn. 448, 9 N.W.2d 245 (1943), involving a blatant conflict of interest situation, this court stressed the strict fidelity required of an attorney and said, "When a breach of faith occurs, the attorney's right to compensation is gone." *Id.* at 460, 9 N.W.2d at 251. The attorney was denied any fees, even on a quantum meruit basis, the court stating the evidence adequately supported the trial court's finding of a lack of good faith on the part of the attorney. Later, in *Anderson v. Anderson*, 293 Minn. 209, 197 N.W.2d 720 (1972), an attorney acted as a double agent and knowingly participated in a scheme to deprive two beneficiaries of their share in an estate. We said the attorney forfeits his compensation even if the client-principal "cannot prove actual injury to himself or that the agent committed an intentional fraud." *Id.* at 216, 197 N.W.2d at 724.

The foregoing cases, all involving actual fraud and a single client's claim, stand for the proposition that actual fraud results in a total fee forfeiture. On the other hand, in a case not involving actual fraud or bad faith, we allowed a law firm to collect its fee notwithstanding the client's asserted defense that the attorney failed in his duty to communicate certain information to the client. *Selover v. Hedwall*, 149 Minn. 302, 184 N.W. 180 (1921). We said there was "nothing from which we can infer that they [the lawyers] were guilty of either fraud or bad faith toward him [the client], or that he sustained any loss by reason of their failure to communicate such information." *Id.* at 307, 184 N.W. at 181.

Upon this background, in 1982 we decided *Rice v. Perl*, 320 N.W.2d 407 (Minn. 1982) (*Perl I*), which was our first decision to consider the matter of Perl and his Dalkon Shield clients. There we held Perl and his law firm breached their fiduciary obligation to a client, Cecelia Rice, a woman whose Dalkon Shield settlement was negotiated by Perl, by failing to disclose that Aetna's adjuster, Willard Browne, was simultaneously employed by the Perl law firm on other matters. We held that an attorney who breaches a fiduciary duty to a client "forfeits his right to compensation" without any requirement that the client prove actual harm, and we affirmed summary judgment for Rice for the entire fee. *Id.* at 411. While accepting Perl's contention that his nondisclosure was unintentional and conceding that our prior forfeiture cases all involved overt wrongful conduct, we nevertheless approved the fee forfeiture, observing that "the law has traditionally been unyielding in its assessment of penalties when a fiduciary * * * has breached any of his obligations." *Id.* We quoted from *Selover* on an attorney's duty to communicate to his client any information affecting the client's interests but without mentioning that in *Selover* the attorney was permitted to have his fees. *Id.* at 410.

Two years later the matter came before us again in *Perl v. St. Paul Fire & Marine Insurance Co.*, 345 N.W.2d 209 (Minn.1984) (*Perl II*), where we held: (1) forfeiture of attorney fees was an award of "money damages" within the coverage of Perl's malpractice insurance policy; (2) the policy's fraudulent act exclusion did not apply to constructive fraud; (3) the policy's exclusion for "exemplary or punitive damages" was inapplicable; and (4) insurance covering forfeiture for one's own breach of fiduciary duty is contrary to public policy, but coverage for the law firm's vicarious liability is not. By dictum in footnote 5 of the opinion we commented on the measure of damages:

Ordinarily it would seem breach of the fiduciary duty results in complete forfeiture damages, but it is unclear if there may be exceptions in some situations where actual fraud is absent, where no actual damages are sustained, and where there are multiple client claims. If forfeiture of fees for breach of a fiduciary duty are damages, as we here hold, and if these damages have a punitive content, as we here declare, it is at least arguable that the trier of fact in awarding such damages might consider much the same factors as the trier of fact considers in making a standard punitive damages award. *See* Minn.Stat. § 549.20, subd. 3 (1983).

345 N.W.2d at 214 n. 5.

### Discussion

■ The question raised in footnote 5 is now before us. In these appeals, 129 of Perl's former clients seek damages consisting of fee forfeiture for breach of a fiduciary duty constituting constructive fraud. The clients sustained no actual damages.[2] Under these circumstances, must the fee forfeiture be total or may it be scaled to the degree of misconduct?

Plaintiffs assert this issue was decided in *Perl I* in favor of total forfeiture. They point out in *Perl I* there was no actual fraud and Cecelia Rice sustained no actual damages, but she nevertheless recovered her entire fee. *Perl I*, however, discussed fee forfeiture only within the context of Ms. Rice's single claim; the presence of the claims of other clients was not considered, and it was simply assumed if there was to be any forfeiture for Ms. Rice, it was of the entire fee. In short, the issue of whether a fee forfeiture might be scaled to the degree of misconduct was never raised nor discussed in *Perl I*. The issue, therefore, remains to be decided here.

In *Perl II*, we analyzed the subtle, dual nature of the fee forfeiture remedy, with its punitive and nonpunitive aspects. We said a fee forfeiture is not restitution but rather damages similar to nominal damages for breach of an "absolute" right. "[T]he client is deemed injured even if no actual loss results." *Id.* at 212. We then held the policy's fraudulent act exclusion inapplicable, stating that breach of an ethical duty, unaccompanied by intentional wrongdoing or actual fraud, is considered to be constructive fraud. "Since much of an attorney's practice involves fiduciary duties, to exclude such conduct from an attorney's liability policy would eviscerate the policy coverage." *Id.* at 213. We then considered whether the fee forfeiture, deemed to be "money damages" within the policy coverage, was excluded by the punitive damages exclusionary clause. We said that while both punitive damages and a fee forfeiture served to deter and punish, the two types of damages were distinct: "While a forfeiture may punish, the aim is to make amends to the client—to 'put right' the attorney-client relationship that has been tainted." *Id.* at 214. Consequently, in considering the dual nature of the fee forfeiture remedy, we relied on the reparational nature of the forfeiture in deciding that the punitive damages policy exclusion did not apply, while in footnote 5 we suggested fee forfeitures might, nevertheless, be likened more to punitive damages for purposes of fixing the amount of the forfeiture.

As *Perl II* makes clear, forfeiture damages are both reparational and admonitory. Because clients have an "absolute right" to their attorney's undivided loyalty, any breach is deemed to result in some harm entitling the client to reparation consisting of at least nominal damages; still, undeniably, the predominant functions of any fee forfeiture are punishment and deterrence.

So it can be argued the punitive function of a fee forfeiture is maximized by total

---

**2.** Plaintiff Gilchrist's complaint alleges actual damages, *i.e.,* that her settlement amount was less than it would have been absent the breach of fiduciary duty. Her affidavit, however, gives no supporting facts, while Perl's affidavit says the settlement was fair, adequate, and in excess of the amount for which Perl was authorized by Gilchrist to settle. In *Klein,* there is neither an allegation nor offered proof of any actual damages.

fee forfeiture. This absolutist view emphasizes the importance of strict fidelity to one's client and to the Rules of Professional Conduct. *See In re Estate of Lee, supra.* Total fee forfeiture has a symbolic or cautionary value. It teaches a lesson. Total forfeiture also carries an added sting because it requires a return not just of the attorney's net fee, but of all the fee, including that part covering office overhead.

On the other hand, in dealing with regular punitive damages, this court has stated, "[A]n award should not exceed the level necessary to properly punish and deter." *Melina v. Chaplin,* 327 N.W.2d 19, 20 n. 1 (Minn.1982). The level necessary to punish and deter is determined by several factors, now codified in Minn.Stat. § 549.20, subd. 3 (1984):

> Any award of punitive damages shall be measured by those factors which justly bear upon the purpose of punitive damages, including the seriousness of hazard to the public arising from the defendant's misconduct, the profitability of the misconduct to the defendant, the duration of the misconduct and any concealment of it, the degree of the defendant's awareness of the hazard and of its excessiveness, the attitude and conduct of the defendant upon discovery of the misconduct, the number and level of employees involved in causing or concealing the misconduct, the financial condition of the defendant, and the total effect of other punishment likely to be imposed upon the defendant as a result of the misconduct, including compensatory and punitive damage awards to the plaintiff and other similarly situated persons, and the severity of any criminal penalty to which the defendant may be subject.

Most, if not all, of these factors appear equally relevant to determining the appropriate amount of a fee forfeiture. The parties all agree—and we reaffirm—that cases of actual fraud or bad faith result in total fee forfeiture. But when no actual fraud or bad faith is involved, when no actual harm to the client is sustained, and particularly when there are multiple potential plaintiffs, we think the better approach is to determine the amount of the fee forfeiture by a consideration of the relevant factors set out in Minn.Stat. § 549.20, subd. 3 (1984). We so hold.[3]

## II.

■ If, as we have now held, the amount of the fee forfeiture is to be determined by the trier of fact, defendant Perl contends there is insufficient "commonality" among class members to justify Rule 23.02(3) class certification in the Klein action. We disagree.

Questions of law or fact common to the class are a prerequisite to a class action, Minn.R.Civ.P. 23.01(2), and common questions of law or fact must predominate over questions affecting only individual members. Minn.R.Civ.P. 23.02(3). These conditions are amply met. The disputed questions of law just discussed are common to all members of the class. The particular breach of fiduciary duty involved is the same for all members of the class.

Indeed, we think the class action is ideally suited here. *Cf.* Note, *Class Actions for Punitive Damages,* 81 Mich.L.Rev. 1787 (1983). All plaintiffs have precisely the same claim against defendants, namely, that attorney Perl failed to tell them he had engaged Willard Browne in other business at the same time he was negotiating with Browne on their Dalkon Shield claims. This common fact is established. The fact issue remaining is how much of the fee Perl earned from each client should be

---

**3.** Other courts have refused to adopt a rule of absolute fee forfeiture. Thus the Tennessee Supreme Court, after discussing the result reached in our *Rice v. Perl,* 320 N.W.2d 457 (Minn.1982), chose instead what it believed to be the "better view," namely, "Each case involving misconduct of an attorney and the forfeiture of his fee must be viewed in the light of the particular facts and circumstances of the case." *Crawford v. Logan,* 656 S.W.2d 360, 365 (Tenn.1983). *See also Frank v. Bloom,* 634 F.2d 1245, 1257–58 (10th Cir.1980). *Compare Atlantic Richfield Co. v. Sybert,* 295 Md. 347, 456 A.2d 20 (1983); *Perez v. Pappas,* 98 Wash.2d 835, 659 P.2d 475 (1983); *Burk v. Burzynski,* 672 P.2d 419 (Wyo.1983).

returned to the client. There should be no need for separate trials on this issue. The trier of fact in the class action should decide what percentage of the client fees involved should be forfeited. The factors bearing on this percentage are the same for all plaintiffs, so a single percentage figure governs all the claims. Indeed, because Minn.Stat. § 549.20, subd. 3 (1984), says the overall effect of like or similar claims should be considered, it is further appropriate that the trier of fact consider plaintiffs' claims in the aggregate. Once the percentage figure is obtained, the trial court need only apply it to the fee collected by Perl in each settlement—facts which are undisputed—to arrive at the entry of judgment for each individual plaintiff.

### III.

■ Next, we hold the trial court erred in the Klein class action in awarding the class attorneys interim attorney fees of $124,149.50 for representing the class.

Plaintiff Klein points out that court determination of an award of attorney fees is an inherent part of a class action, and, where the class representative is successful in creating a fund for the class, the representative is entitled to recover attorney fees, quoting 3B *Moore's Federal Practice* § 23.91 at 23–559 (1982). Plaintiff's quotation is beside the point. The common fund doctrine says only that class members must pay their attorney out of the fund recovered for the class. The doctrine has nothing to do with whether the defendant sued by the class must, in addition to the damages recovered against him, pay attorney fees. The general rule in this country, subject to well-defined exceptions, is that parties pay their own attorney fees.[4]

■ Plaintiff Klein and the trial court next contend that when a fiduciary commits a breach of trust, the fiduciary must pay the attorney fees expended in curing that breach, *citing Tarnowski v. Resop*, 236 Minn. 33, 51 N.W.2d 801 (1952), and *Hill v. Okay Construction Co., Inc.*, 312 Minn. 324, 252 N.W.2d 107 (1977). *See also Bergquist v. Kreidler*, 158 Minn. 127, 196 N.W. 964 (1924). These cases are not on point. They hold only that when a fiduciary's breach requires a plaintiff to incur legal expenses against a third party, the plaintiff may recover his attorney fees for that litigation from the fiduciary. The cases do not stand for the proposition that a plaintiff can recover his attorney fees in suing the fiduciary. The proper rule here is explained in *Chris/Rob Realty v. Chrysler Realty Corp.*, 260 N.W.2d 456, 460 (Minn.1977):

> When one party as a direct result of tortious conduct or breach of contract causes a second party to enter into litigation with a third party, the second party's litigation expenses are a proper element of damages in an action against the first party. * * * Since in the instant case respondents do not seek expenses incurred in litigation with a third party, *Bergquist* and similar decisions are of no avail to them. [Citations omitted.]

We hold, therefore, the plaintiff class is not entitled to recover attorney fees from the defendant. This renders moot the further claim by the plaintiff class that the trial court erred in denying a multiplier effect to their attorneys' lodestar figure.

■ The plaintiff class is, however, entitled to recover reasonable attorney fees incurred in proving what defendants unjustifiably refused to admit in a request for an admission. Plaintiff class submitted a request that defendants admit they had not informed any client of their concurrent business relationship involving payments to Willard F. Browne. Defendants responded

---

4. Plaintiffs argue an award of attorney fees is necessary if the class is to be "made whole." If transaction costs of the legal system are to be so recognized, every prevailing litigant could make the same argument, and this, of course, is not the American rule. It is somewhat incongruous to say plaintiffs in this case need to be "made whole." None of the class members allege any actual harm or loss, nor, as we noted in *Perl II*, are the damages awarded restitutionary in nature. Indeed, several of the class plaintiffs, as shown by their affidavits, apparently thought their fee forfeiture recovery an unexpected windfall.

with a general denial. The trial court said, "Had this request been answered truthfully, several hours of legal effort and expense could have been avoided by plaintiff class." We agree the answer was vexatious, and defendants have offered no good reason for their failure to admit. An award of fees and costs under Minn.R. Civ.P. 37.03, however, is limited to "reasonable expenses incurred in making that proof, including reasonable attorney's fees." We remand on this issue for a determination of plaintiffs' expenses in proving Request for Admission No. 6.

■ The plaintiff class also appeals the trial court's denial of treble damages under Minn.Stat. §§ 481.07 and .071 (1984). These two sections, which are virtually identical, provide that an attorney who, with intent to deceive, participates in deceit or collusion is liable to the injured party for treble damages and is also guilty of a misdemeanor. While there are now no damages before us to be trebled, the issue will likely return, so it should be briefly mentioned here. These two sections apply to intentional or actual fraud or deceit. *See State v. Casby*, 348 N.W.2d 736 (Minn. 1984). We need not decide if the damages awarded to the plaintiff class are the kind of damages which may be trebled, *see Smith v. Chaffee*, 181 Minn. 322, 326, 232 N.W. 515, 517 (1930) (seems to require "direct actual" damages); it is enough to note we have no allegation or proof by the plaintiff class of any actual, as opposed to constructive, fraud. Consequently, the trial court correctly ruled the imposition of treble damages was inappropriate.

### IV.

We affirm the trial court's denial of plaintiff Gilchrist's motion for summary judgment. There is a genuine fact issue on the amount of defendant's fee to be forfeited.

We reverse the awards of damages and attorney fees in the Klein class action and remand for trial in accordance with this opinion. The damage awards to be determined will not be subject to prejudgment interest because damages remain unliquidated until judgment. We remand for determination of the attorney fees and costs to be awarded for the failure to answer the request for an admission.

In the Gilchrist case, affirmed.

In the Klein class action, reversed in part, affirmed in part, and remanded.

WAHL and KELLEY, JJ., dissent.

COYNE, J., took no part in the consideration or decision of this case.

WAHL, Justice (dissenting).

### I.

I respectfully dissent. There is no basis for distinguishing between these cases and *Rice v. Perl*, 320 N.W.2d 407 (Minn.1982). In *Rice*, this court held that Perl, the defendant in that case as well, breached his fiduciary duty to his client by failing to disclose to that client that he and his firm were making payments to the adverse insurance adjuster who was settling her claim. *Rice* established the rule that an attorney's undisclosed business relationship with an adverse insurance adjuster is a breach of fiduciary duty to the client whose claim is being adjusted that results in a total forfeiture of attorney fees paid by the client. In establishing that rule, it did not matter to this court that Rice had failed to allege that she suffered any damages due to Perl's failure to disclose. It did not matter whether the nondisclosure was unintentional. What did matter was the need to insure the attorney's absolute fidelity to the client's interests in order to establish the trust necessary to the proper functioning of the attorney-client relationship. *Id.* at 411.

This total forfeiture rule applies to the cases now before us. The facts with regard to the 128 plaintiffs granted summary judgment in *Klein* and the facts with regard to the single plaintiff in *Gilchrist*, denied summary judgment on the basis of footnote 5 in *Perl v. St. Paul Fire and Marine Insurance Co.*, 345 N.W.2d 209,

214 n. 5 (Minn.1984), are identical to the facts in *Rice*. In each case, in accordance with an attorney-client retainer agreement, the plaintiff paid attorney Perl 33⅓ percent of any settlement obtained pursuant to her Dalkon Shield claim as attorney fees. In each case, Perl breached his fiduciary duty to the client by failing to disclose his business relationship with the adverse insurance adjuster who adjusted the client's claim. And, in each case, *Rice* mandates total forfeiture of the attorney fees paid.

Yet, with a few deft strokes, the majority opinion renders our decision in *Rice* meaningless. There, it is said, we discussed fee forfeiture only within the context of a single claim, not within the context of many claims. What, one must ask, does this mean? Does it mean that if an attorney breaches a fidiciary duty to one client by failing to disclose a business relationship with an adverse insurance adjuster, total fee forfeiture is mandated, but if that same attorney breaches the same fidiciary duty in the same way to a great number of clients, the degree of misconduct is somehow less? This is a strange concept of logic and justice.

The majority opinion further insists that because *Rice* never raised nor discussed the issue of whether a fee forfeiture might be scaled to the degree of misconduct, we must decide that issue here. Certainly Perl, aware of his potential exposure, could have raised this issue in *Rice*. Certainly the *Rice* court could have discussed the issue had it been thought necessary to do so. Instead, the court in *Rice* determined without hesitation that this particular misconduct warranted total forfeiture of the attorney's right to compensation. Whether some lesser degree of misconduct presented by other facts might dictate adoption of a scaled fee forfeiture we can decide on the day that case is presented to us. As to this particular misconduct, the decision was made in *Rice* and that decision was that total forfeiture of fees was the proper result. Precedent dictates that the bright line we drew in *Rice* be drawn again today.

## II.

The concept of a sliding scale for forfeiture of attorney fees for breach of a fiduciary duty to a client does not, in my view, sufficiently protect the integrity of the legal profession in the perception of the public. I would propose an alternative rule defining two levels of severity of breach of fiduciary duty to a client with two corresponding degrees of fee forfeiture as the result. First, for actual fraud and breaches of fidelity to the client which, like that of Perl's, we find to endanger the trust necessary to the proper functioning of the attorney-client relationship, total forfeiture is appropriate, and we so ordered in *Rice*. Second, for lesser breaches, breaches that present a minimal threat to the trust and confidence between lawyer and client, the attorney would be permitted to retain that portion of the fees paid to compensate for costs, expenses, and office overhead, but would not be permitted to retain what the majority opinion characterizes as the attorney's net fee. In other words, the attorney would not be permitted to profit by his or her breach, but would be recompensed for actual costs and expenses in handling the client's case.

## III.

With regard to the other issues raised, I agree with the holdings of the majority opinion: 1) There is sufficient commonality among class members to justify class certification in the *Klein* action; 2) the plaintiff class in *Klein* is not entitled to recover attorney fees from the defendant except that the plaintiff class is entitled to recover reasonable attorney fees incurred in proving what defendants unjustifiably refused to admit in a request for admission; and 3) the trial court correctly ruled the imposition of treble damages inappropriate.

I would reverse the trial court's denial of Gilchrist's motion for summary judgment.

I would affirm the award of damages, including prejudgment interest, in the *Klein* class action, but would reverse the award of attorney fees except that I would remand for determination of the attorney

fees and costs to be awarded for the failure to answer the request for an admission.

KELLEY, Justice (dissenting).

I join in the dissent of Justice Wahl.